Maxon R. Davis
DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.
The Milwaukee Station, Third Floor
101 River Drive North
P.O. Box 2103
Great Falls, MT 59403-2103
Telephone:  406-761-5243
Facsimile:   406-761-4126
max.davis@dhhtlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| GENERAL STAR INDEMNITY COMPANY, | Case No. CV-21-22-BU-BMM-JTJ |
| Plaintiff, | |
| v. | **COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT** |
| NORTH AMERICAN INDIAN ALLIANCE - BUTTE; C.G.; A.S.; R.R.; D.T.; and C.M. | |
| Defendants. | |

Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, General Star Indemnity Company ("GenStar"), by and through its undersigned counsel, brings this Complaint for Rescission and Declaratory Judgment against the North American Indian Alliance - Butte ("NAIA"), stating as follows:

## NATURE OF THE ACTION

1.     GenStar seeks rescission of the Miscellaneous Health Care Facilities Policy No. IJG415121F, which it issued to NAIA for the policy period of September 16, 2018 to September 16, 2019 (the "Policy") because, at the time that NAIA applied for the Policy, NAIA failed to disclose that a physician employed by NAIA for nearly fifteen years, Dr. Patrick McGree, had been criminally charged with sexual assault of female patients.

2.     GenStar further, and in the alternative if the Policy is not rescinded, seeks a declaration that the Policy does not impose any obligation on GenStar to defend or indemnify NAIA in the class action lawsuit captioned *C.G., et al. v. North American Indian Alliance, et al.,* No. DV-19-53, Second Judicial District Court of Silver Bow County, Montana (the "Underlying Lawsuit").  As set out in further detail below, the Underlying Lawsuit does not fall within the Policy because it is based upon alleged misconduct that began prior to the retroactive date in the Policy.

## PARTIES

3.     Plaintiff General Star Indemnity Company is an insurance company organized under the laws of Delaware, and its principal place of business is in Stamford, Connecticut.

US_Active\117096461\V-3

4.     Defendant North American Indian Alliance - Butte is a non-profit organization that provides health care services.  Upon information and belief, North American Indian Alliance -Butte is organized under the laws of Montana, and its principal place of business is in Butte, Montana.

5.     Upon information and belief, Defendant C.G. is an individual residing in Silver Bow County, Montana.

6.     Upon information and belief, Defendant A.S. is an individual residing in Silver Bow County, Montana.

7.     Upon information and belief, Defendant R.R. is an individual residing in Silver Bow County, Montana.

8.     Upon information and belief, Defendant D.T. is an individual residing in Silver Bow County, Montana.

9.     Upon information and belief, Defendant C.M. is an individual residing in Silver Bow County, Montana.

## JURISDICTION AND VENUE

10.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

11.     Declaratory relief is authorized pursuant to 28 U.S.C. § 2201.

US_Active\117096461\V-3

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

A.     **Dr. McGree and NAIA's Application for Insurance**

13.     Upon information and belief, Dr. Patrick McGree was a physician at NAIA from 2004 to 2017.

14.     Upon information and belief, during his time at NAIA, Dr. McGree regularly saw patients alone in examination rooms and in his office.

15.     On September 14, 2017, Dr. McGree resigned from NAIA, stating that he was retiring from medicine.

16.     A few days later, on September 18, 2017, a spokesperson for the State of Montana announced that Dr. McGree was under investigation with the state's Division of Criminal Investigation at the request of the Butte-Silver Bow County Sheriff's Department.  This announcement was reported in the local news.

17.     In December of 2017, Dr. McGree was arrested and criminally charged by state prosecutors with two felony counts of sexual intercourse without consent, three felony counts of sexual servitude for allegedly using prescription pain pills for coercion, and two counts of misdemeanor sexual assault of female

patients. Those charges were based on interviews with three former patients, who alleged that they were victims of Dr. McGree during his time at NAIA.

18.     The criminal charges against Dr. McGree were widely reported in the local news at the time that they were made, and NAIA was aware of these criminal charges; NAIA has since admitted in writing to GenStar that it had learned of the accusations against Dr. McGree in December, 2017, from local news outlets.

19.     On August 27, 2018, NAIA submitted an application for insurance to GenStar that sought, among other things, claims made insurance coverage for sexual abuse or molestation (the "Application").  A true and accurate copy of the Application is attached hereto as Exhibit A.

20.     Among other questions, Question V.3.a on the Application asked if NAIA was aware of "known losses or claims that have not been reported to a prior insurance carrier or any other source from which payment might be made?"  NAIA responded "no."

21.     Among other questions, Question V.3.b on the Application asked if NAIA had "[k]nowledge of facts or circumstances that relate to a medical incident(s) arising from professional services which could reasonably result in a claim?"  NAIA responded "no."

22.     Among other questions, Question V.3.c on the Application asked if NAIA had "[k]nowledge of any requests by a patient and his/her attorney which might result in a claim?"  NAIA responded "no."

23.     GenStar issued the Policy in reliance on NAIA's representations in the Application.

### B.     The Policy

24.     GenStar issued Miscellaneous Health Care Facilities Policy No. IJG415121F to NAIA for the policy period of September 16, 2018 to September 16, 2019 (the "Policy"), which, subject to its terms, conditions, and exclusions, provides claims made and reported professional liability insurance coverage and general liability coverage.  A true and accurate copy of the Policy is attached hereto as Exhibit B.

25.     The Policy's retroactive date for Abuse or Molestation claims is September 16, 2005 (the "Retroactive Date").

26.     The Insuring Agreement of the Professional Liability Coverage in the Policy provides, in relevant part, that:

**1. Insuring Agreement**

We will pay all amounts up to our Limit of Insurance that an **Insured** becomes legally obligated to pay as **damages** because of:

**a. Claims** first made against an **Insured** during the **policy period** arising from a **medical incident** that takes

6

place on or after the Retroactive Date shown in the Declarations or an Endorsement or Schedule attached to this policy and prior to the end of the **policy period** and reported to us in writing during the **policy period** or within thirty (30) days thereafter or during any Optional Extended Reporting Period, if applicable;

**b. Claims** first made against an **Insured** after the end of the **policy period** arising from **medical incident** that takes place within the coverage territory on or after the Retroactive Date shown in the Declarations or an Endorsement or Schedule attached to this policy and prior to the end of the **policy period**, provided that you give us notice of said **potential claim** arising from such **medical incident** during the **policy period.**

…

There is no coverage under this policy for any **claim** arising from a **medical incident** that took place before the Retroactive Date shown in the Declarations or an Endorsement or Schedule attached to this policy.

27.     The Policy defines "medical incident" as follows:

**Medical Incident** means any act, error or omission, or a series of related acts, errors or omissions, in the providing of or failure to provide **professional services** including the actual, threatened, attempted, proposed or alleged abuse and/or molestation of a patient of an **insured** if a sublimit for **Abuse or Molestation** is shown in the Limits of Insurance in the Declarations. This includes an **Insured's** responsibility for anyone acting under the **Insured's** direction or control.

28.     The Declarations page of the Policy includes a sublimit of $1 million per claim and in the aggregate for Abuse or Molestation.

29.     The Policy also states that:

**c.** An **abuse or molestation claim**, including a **related abuse or molestation claim** or **potential claim**, if such coverage is indicated as provided in the Declarations, will be deemed:

(1) To have occurred at the time of the first **abuse or molestation** incident;

2) To be covered under this Coverage Part only if the first **abuse or molestation** incident takes place on or after the Retroactive Date shown in the Declarations or Endorsement or Schedule attached to this policy and before the end of the **policy period** and is made and reported in accordance with Paragraph 1 a. and b. of the Insuring Agreement.

**d.** All **related claims**, including **related abuse or molestation claims**, whenever made and reported, will be deemed to constitute a single **claim** first made and reported to us within the **policy period** in which the earliest of the **related claims** was first made and reported to us within the **policy period** in which the earliest of the **related claims** was first made and reported to us or when we first received notice of a **potential claim** that gave rise to such **related claims**.

**e.** All **damages** arising from **related abuse or molestation claims**, whenever made and reported, will be deemed to be a single **claim**:

(1) Whether committed by the same person or two or more persons acting in concert and without regard to the number of:

(a) Acts of **abuse or molestation** taking place after the first **abuse or molestation**;

(b) Victims of **abuse or molestation**;

(c) Locations where the **abuse or molestation** took place:

8

(d) Policy periods over which the **abuse or molestation** took place; or

(e) Breaches of any legal obligation arising out of any abuse or molestation, or suspected or threatened **abuse or molestation**, or breach of any duty to any person who was abused or molested.

30.     The Policy contains the following additional definitions:

**1. Abuse or Molestation** means:

a. The alleged, actual, threatened, unwelcome or offensive:

(1) Physical conduct, including sexual abuse or molestation; or

(2) Verbal or written conduct or conduct using visual images, including conduct by electronic means;

Including:

b. The negligent

(1) Employment;

(2) Investigation;

(3) Supervision;

(4) Reporting to proper authorities, or failure to so report; or

(5) Retention;

of a person for whom any insured is or ever was legally responsible, and who conduct is defined by Paragraph 1.a.(1) and (2) above; and

c. Breach of any legal obligation arising out of **any abuse or molestation** event, or suspected or threatened molestation, or breach of any duty to any person who was abused or molested.

\*\*\*

**22. Related abuse or molestation** means acts having a common nexus with, or involving, a series of casually or logically related acts.

31.    The Policy further provides that:

**Rescission, Concealment, Misrepresentation, Fraud**

By signing the application for insurance and accepting this policy, you on behalf of all **Insured** agree, represent and warrant that:

a. The statements and information contained in the Application, including all statements, information and documents referenced in, accompanying, or relating to, the Application are:

(1) Incorporated in and made part of this policy by reference;

(2) accurate and complete and no facts have been suppressed, omitted or misstated; and

(3) Material to us, and we have issued this policy in reliance upon the truth, completeness and accuracy of the information contained in the application and its supporting documents;

b. Any failure to fully and accurately disclose the information requested in the Application, whether by omission or suppression, or any misrepresentation in the statements and information contained in the Application, including all statements, information and documents referenced in, accompanying, or relating to, the application, renders coverage for any claim(s) or potential claim(s) null and void and entitles us to rescind the policy from its inception.

C.   **The Underlying Lawsuit**

32.   On February 20, 2019, the Underlying Lawsuit was filed in the

Montana Second Judicial District Court of Silver Bow County, State of Montana

by a purported class of former female patients of Dr. McGree.  On March 12, 2019,

the purported class filed their Amended Class Action Complaint against NAIA and

unidentified Doe Defendants who are described as "John Does 1 through 30."  A

true and accurate copy of the Amended Complaint is attached hereto as Exhibit C.

33.   The Underlying Lawsuit alleges that Dr. McGree worked for NAIA as

NAIA's primary care physician and its only medical doctor between 2002 and

November 2017.  During the entirety of Dr. McGree's employment with NAIA,

the Underlying Lawsuit alleges that he subjected multiple female patients to

unwanted and unsolicited conduct while the patients were receiving medical care at

NAIA, including, but not limited to, sexual assault, sexual servitude, and rape.

34.   During this time, the Amended Complaint alleges that on multiple

occasions certain of the purported class members made specific complaints to

NAIA with regard to Dr. McGree's conduct, and that such complaints were

formally discussed on multiple occasions by NAIA's Board of Directors. However,

despite these alleged complaints to NAIA, NAIA allegedly failed to take any

actions to investigate the claims or to otherwise implement any steps to provide for

the safety, security, and wellbeing of NAIA's female patients of Dr. McGree.

35.     The Amended Complaint asserts a single cause of action against NAIA for negligence. The negligence count against NAIA alleges that, as a medical care provider to the purported class members and as Dr. McGree's employer, NAIA owed the purported class members various duties of care, including a duty of care to implement, safeguard, monitor, supervise, investigate, identify, and/or report any negligent actions/omissions or medical malpractice of Dr. McGree so as to prevent injury or harm to the purported class members. The allegations in the negligence count against NAIA allege further that, among other things, NAIA had a duty to properly investigate reports/complaints regarding Dr. McGree's alleged conduct, that it had a duty to report Dr. McGree's conduct to the appropriate authorities, and that it had a duty to protect and safeguard the purported class members from being subjected to Dr. McGree's conduct. The Underlying Lawsuit alleges, however, that NAIA breached these duties and was negligent in failing to do so despite allegedly being aware, or having should been aware, of such conduct.

36.     As a result of NAIA's alleged negligent acts and breaches of duties, the Underlying Lawsuit asserts that NAIA proximately caused injury, harm, and other damages to the purported class members. As such, the Underlying Litigation asserts that the purported class members are entitled to full recovery of all of their damages from NAIA.

**D.**   **Notice to GenStar and Coverage Dispute**

37.     NAIA gave GenStar notice of the Underlying Lawsuit on or around March 14, 2019, and GenStar acknowledged receipt on or around that same day.

38.     On April 2, 2019, GenStar agreed to assume the defense of NAIA in the Underlying Lawsuit pursuant to a full reservation of rights (the "Reservation of Rights Letter").  A true and accurate copy of GenStar's Reservation of Rights Letter is attached hereto as Exhibit D.  Among other things, the Reservation of Rights Letter reserved the right to deny coverage because the allegations of the Underlying Lawsuit alleged misconduct prior to the Retroactive Date, and further reserved the right to rescind the Policy for misrepresentations on the Application.

39.     GenStar has been paying for NAIA's defense in the Underlying Lawsuit since March 14, 2019.

40.     It is GenStar's position that the Application contains material misrepresentations, such that rescission of the Policy is appropriate.

41.     It is further GenStar's position that, even if the Policy were not rescinded, the Policy would still not provide coverage for NAIA's defense or indemnification in the Underlying Lawsuit because that lawsuit alleges misconduct that first occurred prior to the Retroactive Date in the Policy.

42.     It is also GenStar's position that, because the Policy should be rescinded and/or does not provide coverage for NAIA's defense in the Underlying

US_Active\117096461\V-3

Lawsuit, GenStar is entitled to recoupment of the defense costs that it has paid to date on behalf of NAIA in the Underlying Lawsuit.

43.     An actual controversy exists between GenStar and NAIA regarding GenStar's obligations, if any, to defend or indemnify NAIA in the Underlying Lawsuit and GenStar's right to recoupment for the defense costs incurred on NAIA's behalf.

## COUNT I - RESCISSION

44.     GenStar reasserts and incorporates by reference the above Paragraphs as if fully set forth herein.

45.     NAIA submitted the Application to GenStar approximately eight months after Dr. McGree was arrested and criminally charged with sexually assaulting female patients at NAIA.

46.     NAIA was aware of Dr. McGree's arrest and the criminal charges against him at the time that it submitted the Application.

47.     Question V.3.a on the Application asked if NAIA was aware of known losses or claims that have not been reported to a prior insurance carrier or any other source from which payment might be made.  NAIA responded "no."

48.     Question V.3.b on the Application asked NAIA if it had knowledge of facts or circumstances that relate to a medical incident arising from professional services which could reasonably result in a claim.  NAIA responded "no."

49.     Question V.3.c. on the Application asked if NAIA had knowledge of any requests by a patient and his/her attorney which might result in a claim.  NAIA responded "no."

50.     Questions V.3.a, V.3.b, and V.3.c in the Application (collectively, the "Application Questions") were sufficiently specific so that a reasonable person would have understood the requirement to provide the particular facts regarding the criminal charges against Dr. McGree in response to that question.

51.      NAIA's response to the Application Questions were material to GenStar's decisions to provide coverage to NAIA, to determine the premium or rate to be charged for the coverage and/or to specifically exclude any coverage to NAIA for prior conduct of Dr. McGree .

52.     GenStar issued the Policy in reliance upon NAIA's representations in the Application, including NAIA's response to the Application Questions.

53.     The Policy provides that:

**Rescission, Concealment, Misrepresentation, Fraud**

By signing the application for insurance and accepting this policy, you on behalf of all **Insured** agree, represent and warrant that:

a. The statements and information contained in the Application, including all statements, information and documents referenced in, accompanying, or relating to, the Application are:

(1) Incorporated in and made part of this policy by reference;

15

(2) accurate and complete and no facts have been suppressed, omitted or misstated; and

(3) Material to us, and we have issued this policy in reliance upon the truth, completeness and accuracy of the information contained in the application and its supporting documents;

b. Any failure to fully and accurately disclose the information requested in the Application, whether by omission or suppression, or any misrepresentation in the statements and information contained in the Application, including all statements, information and documents referenced in, accompanying, or relating to, the application, renders coverage for any claim(s) or potential claim(s) null and void and entitles us to rescind the policy from its inception.

54.     NAIA's responses to the Application Questions were material misrepresentations.  At the time that NAIA submitted these responses, NAIA was aware that Dr. McGree had been criminally charged with sexually assaulting female patients at NAIA, and that these charges constituted a loss and/or could reasonably result in a claim against NAIA.  Further, upon information and belief, NAIA had received requests from medical records from female patients of Dr. McGree at the time of the Application, and that these requests related to a potential claim against NAIA.

55.     If NAIA had disclosed the criminal charges against Dr. McGree on the Application, GenStar in good faith would either have not issued the Policy to NAIA at all, or would not have issued the Policy in as large an amount or at the same

premium or rate or would not have provided coverage for sexual abuse or molestation claims involving Dr. McGree.

56.    GenStar reasonably relied upon the accuracy of NAIA's answers in the Application.

57.    As a direct and proximate consequence of NAIA's misrepresentations on the Application, GenStar issued liability insurance to NAIA at a premium and on terms that it would not have issued had it known about the criminal charges against Dr. McGree.

58.    As a result, the Policy is voidable due to the material misrepresentation in NAIA's responses to the Application Questions.  The Policy should be rescinded, and GenStar should be awarded recoupment of the defense costs that it has paid on behalf of NAIA in the Underlying Lawsuit.

## COUNT II - DECLARATORY JUDGMENT - NO COVERAGE DUE TO RETROACTIVE DATE

59.    GenStar reasserts and incorporates by reference the above Paragraphs as if fully set forth herein.

60.    Subject to its other terms, conditions, and exclusions, the Policy provides that:

> An **abuse or molestation claim**, including a **related abuse or molestation claim** or **potential claim**, if such coverage is indicated as provided in the Declarations, will be deemed:

(1) To have occurred at the time of the first **abuse or molestation** incident;

2) To be covered under this Coverage Part only if the first **abuse or molestation** incident takes place on or after the Retroactive Date shown in the Declarations or Endorsement or Schedule attached to this policy and before the end of the **policy period** and is made and reported in accordance with Paragraph 1 a. and b. of the Insuring Agreement.

61.     The Policy defines "abuse or molestation" and "related abuse or

molestation" as follows:

**1. Abuse or Molestation** means:

a. The alleged, actual, threated, unwelcome or offensive:

(1) Physical conduct, including sexual abuse or molestation; or

(2) Verbal or written conduct or conduct using visual images, including conduct by electronic means;

Including:

b. The negligent

(1) Employment;

(2) Investigation;

(3) Supervision;

(4) Reporting to proper authorities, or failure to so report; or

(5) Retention;

of a person for whom any insured is or ever was legally responsible, and who conduct is defined by Paragraph 1.a.(1) and (2) above; and

US_Active\117096461\V-3

c. Breach of any legal obligation arising out of **any abuse or molestation** event, or suspected or threatened molestation, or breach of any duty to any person who was abused or molested.

\*\*\*

**22. Related abuse or molestation** means acts having a common nexus with, or involving, a series of casually or logically related acts.

62.     The Retroactive Date for Abuse or Molestation in the Policy is September 16, 2005.

63.     The Underlying Lawsuit's claims against NAIA allege "related abuse or molestation," as the claims concern the actions of a single perpetrator against female patients at NAIA.

64.     The Underlying Lawsuit alleges that Dr. McGree's treatment of the named plaintiffs at NAIA began in 2002, years prior to the Retroactive Date, and that his abuse of these plaintiffs was ongoing throughout this time.

65.     Additionally, medical records for certain of the named plaintiffs confirm that Dr. McGree began treating these individuals at NAIA at least by 2004 and early 2005, prior to the Retroactive Date.

66.     The first "abuse or molestation incident" alleged against Dr. McGree in the Underlying Lawsuit, therefore, occurred prior to the Retroactive Date.

67.     Therefore, and in the alternative if the Policy is not rescinded, the Underlying Lawsuit does not trigger coverage under the Policy.

68.     An actual controversy exists between GenStar and NAIA regarding whether the Underlying Lawsuit triggers coverage under the Policy.

69.     GenStar is entitled to a declaration pursuant to 28 U.S.C. § 2201 that the Policy does not obligate it to defend or indemnify NAIA for the Underlying Lawsuit because the Underlying Lawsuit is based upon alleged misconduct that first took place prior to the Retroactive Date, and is entitled to recoupment of the defense costs that it has paid on behalf of NAIA in the Underlying Lawsuit.

## COUNT III - DECLARATORY JUDGMENT - NO COVERAGE UNDER THE POLICY FOR ADDITIONAL REASONS

70.     GenStar reasserts and incorporates by reference the above Paragraphs as if fully set forth herein.

71.     In the alternative, assuming that the Policy is not rescinded, the obligation of GenStar to defend or indemnify NAIA in the Underlying Lawsuit also is limited, barred, or excluded by one or more of various other terms, conditions, and provisions of the Policy, and for other reasons, as follows:

  a. To the extent the Underlying Lawsuit does not allege a "medical incident" as that term is defined by the Policy;

  b. To the extent that NAIA does not incur "damages" that it is legally obligated to pay in connection with the Underlying Lawsuit;

US_Active\117096461\V-3

c.   To the extent that the Underlying Lawsuit asserts any claim arising out of, resulting from, caused by or contributed to by "bodily injury" not caused in connection with a "medical incident";

d.   To the extent that the Underlying Lawsuit asserts any claim that arises out of, results from, was caused by, or was contributed to be "any criminal, malicious, dishonest, fraudulent act, error or omission committed by or at the direction of any Insured";

e.   To the extent that NAIA concealed, misrepresented, misstated, or suppressed any fact in connection with any claim or potential claim;

f.   To the extent that the Underlying Lawsuit asserts any claim for a "medical incident" which NAIA had knowledge of before the effective date of the first policy issued to NAIA that would have caused a reasonable person to believe a claim would be made; and

g.   To the extent NAIA has failed to present GenStar with sufficient facts to demonstrate that it is entitled to any coverage under the Policy.

## **PRAYER FOR RELIEF**

WHEREFORE, GenStar respectfully requests that this Court enter a judgment:

A.   rescinding the Policy due to NAIA's material misrepresentation regarding the criminal charges against Dr. McGree on the Application;

US_Active\117096461\V-3

B. in the alternative, if the Policy is not rescinded, declaring that GenStar owes no duty to defend or indemnify NAIA in the Underlying Lawsuit;

C. awarding GenStar recoupment for the defense costs that it has paid on behalf of NAIA in the Underlying Lawsuit; and

D. for all such other and further relief as the Court deems equitably just and proper.

Dated:  March 12, 2021

DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.

By /s/ *Maxon R. Davis*                          _
        Maxon R. Davis
        P.O. Box 2103
        Great Falls, Montana 59403-2103

        *Attorneys for Plaintiff*